THE TRAVELERS' INSURANCE COMPANY, Plaintiff, v. MARK D. STILES
and RICHARD E. PURDY, Defendants.

*Bond conditioned for the faithful conduct of an insurance agent — effect of an agreement between the agent and the insurance company terminating a guaranty by the latter as to the former's compensation — burden of proof that it in fact reduced the agent's compensation.*

An insurance company employed a soliciting agent under a contract which provided that he should be paid for his services by commissions upon the business done by him, which commissions were guaranteed by the insurance company to equal $125 a month, and further that the "compensation may be changed from time to time, as the parties may agree." To secure the faithful performance of the contract by the agent, two third parties, with full knowledge of the terms of the contract of employment, executed a bond to the insurance company conditioned that the agent would account for and pay over all moneys received on account of the insurance company.

Subsequently the insurance company and the agent entered into a written agreement without notice to or knowledge by the bondsmen to discontinue the monthly guaranty of $125 on and after November 1, 1900. It did not appear whether the discontinuance of the monthly guaranty operated to effect a reduction in the agent's compensation.

*Held,* that, the bondsmen having acknowledged in their bond that the provisions of the contract of employment were known to them, and such provisions having been in fact known to them, the discontinuance of the monthly guaranty of $125, even if it resulted in a reduction in the agent's compensation, did not operate to release the bondsmen from their obligation to make good to the insurance company a sum of money misappropriated by the agent after the guaranty had been discontinued;

That, assuming that the withdrawal of the guaranty, if it operated to reduce the agent's compensation, would release the bondsmen from liability, it was incumbent upon the bondsmen to prove such reduction of compensation as a fact and that it was not sufficient for them to show that the withdrawal of the guaranty might have had that effect.

GOODRICH, P. J., dissented.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*Frank V. Johnson* [*E. Clyde Sherwood* with him on the brief], for the plaintiff.

*William C. Mains,* for the defendants.

HIRSCHBERG, J.:

On May 18, 1900, the plaintiff, a foreign insurance corporation, authorized to transact business in this State, entered into a written agreement with James B. Pugh, whereby he was constituted its agent to solicit insurance at the city of Mount Vernon. The agreement was prepared by the plaintiff, and it provided for his payment by commissions at various rates upon the business which he should succeed in securing. It further provided that in consideration of such commissions, which were guaranteed by the plaintiff to equal $125 monthly, he would furnish and maintain an office at his own expense at Mount Vernon during the continuance of the contract, and would transfer to the plaintiff for renewal all insurance business on his books as it fell due. For the faithful performance of his contract the defendants, with full knowledge of the terms of the agreement, on the same day executed and delivered their bond to the plaintiff, prepared by the latter, and conditioned in the penalty of $1,000, among other things, that he would account for, and pay over, all money received on its account. The said Pugh did rent and maintain an office as agreed upon, but some time subsequently to November 1, 1900, defaulted in the sum of $363.83, which sum after such default and on or prior to April 1, 1901, the plaintiff demanded of the defendants, and which sum they have not paid. On October 17, 1900, the plaintiff and Pugh duly agreed in writing, without notice to or knowledge by the defendants, that the monthly guaranty of $125 should be discontinued on and after November 1, 1900. Such guaranty was in fact withdrawn upon the last-named date, but whether the agent's compensation was in fact affected by such withdrawal does not appear.

The language of the contract of employment in reference to the agent's compensation is as follows: "I further agree to accept as full compensation for all services performed or expenses incurred, during my employment as such agent, the following commissions upon premiums, first annual and renewal, secured by me or obtained through my agency, and duly reported to the home office, which *compensation may be changed* from time to time, as the parties may agree, to wit:" (the rates of commission percentages following). By the agreement the compensation of the agent was accordingly fixed at $125 per month and as much more as the commissions

agreed upon might exceed that sum monthly. The guaranteed amount was as much a part of his compensation as the commissions, provided the latter fell below the stipulated sum, and it was the compensation in terms and not the commissions alone which the parties agreed might be changed. The defendants having acknowledged in their bond that the provisions of the contract of employment were known to them, and such provisions in fact being known to them, the change in compensation, even if established to be material to the risk by effecting a reduction, could not operate to release them from their obligation. As was said in *Smith* v. *Molleson* (148 N. Y. 241, 246): "The contract guaranteed is by reference made a part of the bond, and, therefore, in order to determine the scope of the defendant's undertaking, the two instruments must be read together." That was an action upon a bond guaranteeing a building contract which provided for alterations during the progress of the work. While the case was not decided upon a construction of that portion of the agreement, what was said at page 250 is quite pertinent, viz. : 'It should also be observed that there is a clause in the contract, the material part of which reads as follows : ' Should the owner, at any time during the progress of the said work, request any alterations, deviations, additions or omissions from the said contract, he shall be at liberty to do so, and the same shall in no way affect or make void the contract.' The defendant, having by reference in effect made the contract a part of the bond, must be deemed to have assented to this provision, and to any changes or deviations in performance from the building contract made under it. She has, in effect, guaranteed the performance of a written contract between other parties, which, by its terms, permitted the parties to change it or deviate from it." (See, also, *Socialistic Pub. Assn.* v. *Hoffmann,* 12 Misc. Rep. 440 ; *People* v. *Backus,* 117 N. Y. 196 ; *Frank* v. *Edwards,* 8 Exch. Rep. 214, and *Amicable Mutual Life Ins. Co.* v. *Sedgwick,* 110 Mass. 163.) In the case last cited it was held by the Supreme Judicial Court of Massachusetts that where an insurance company appointed an agent to be paid by certain commissions with a guaranty that they should amount to a specified sum monthly, and the agreement provided that the agency might be terminated by either party on three months' notice, the sureties on the agent's bond, who knew the terms of the appointment, were not discharged by a change in the

mode of compensation by which the agent received increased commissions, but gave up all claim upon the guaranty, notwithstanding the change was made without their knowledge.

But, even if the construction of the contract of employment contended for by the defendants is adopted, no different result can be reached. They claim that the provision permitting a change in the compensation relates only to the commissions and not at all to the guaranty; that is to say, that while the rates of commissions might be changed, the plaintiff should still be regarded as guaranteeing that they would amount to $125 per month, and that the guaranty should not be considered as guaranteeing only that the rates originally provided for would amount monthly to that sum. If, however, the "compensation," which might be changed under the contract, relates only to the commissions, then there has been no change in the compensation as contemplated. The rates of commission have not been altered at all, but remain as provided for in the first instance. The withdrawal of the guaranty in the view now under consideration would be an unauthorized change, but before it could effect a release of the defendants, assuming that it could have that effect, under any circumstances, it must be shown that it reduced the agent's compensation. But, as I have said, there is nothing in the submission tending in any manner to indicate that his commissions did not always exceed the sum of $125 per month. The burden of proving facts which release them from their liability rests upon the defendants, and the court cannot add anything to the statement agreed on by the parties. The guaranty, it is true, may have been withdrawn because the agent was earning so little from the commissions as to make it burdensome to the plaintiff, but it may also have been withdrawn because he was earning so much as to render its continuance unnecessary. Other motives may have inspired the change, but the inquiry is necessarily speculative. It is sufficient that it is incumbent upon the defendants, claiming a release as sureties, to establish affirmatively such a change in the relation of the principal parties as will accomplish that result, and if a reduction in the earning capacity of the agent under his contract of employment would be a valid ground for such release, they have failed to show any such reduction as a consequence of the mere withdrawal of a guaranty which for aught that appears may never have been practically operative

upon the amount of the actual compensation. In other words, if a reduction of the salary of their principal will relieve sureties from their obligation they must show such reduction as a fact, and it cannot be sufficient merely to show something which may have had that effect, however plausible an argument in favor of the assumed reduction may be made upon the inadequate showing.

It follows that the plaintiff is entitled to judgment, in accordance with the terms of submission, for $363.83, with interest from April 1, 1901, and costs.

BARTLETT, WOODWARD and HOOKER, JJ., concurred; GOODRICH, P. J., dissented.

Judgment in favor of the plaintiff for $363.83, with interest from April 1, 1901, and costs, in accordance with submission.